UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WEI SHEN,

        Plaintiff,

vs.

MICHAEL CHERTOFF, et al.,

        Defendants.
_____/

Civil Action No.
06-CV-15631-DT

HON. BERNARD A. FRIEDMAN

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS (DKT. NO. 7)**

This matter is presently before the Court on Defendants' Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. Plaintiff has filed a Response. Defendants did not file a Reply. Pursuant to E.D. Mich. LR 7.1(e)(2), the Court shall decide this motion without oral argument. The Court will grant the motion and dismiss Plaintiff's Complaint.

**I.    HISTORY OF THE CASE**

    **A.  FACTUAL BACKGROUND**

Plaintiff Wei Shen ("Plaintiff"), pro se, alleges that Defendants have improperly delayed the adjudication of his I-485 application to adjust to permanent resident status. (Pl.'s Compl. ¶¶ 1, 2.) Defendants are: Michael Chertoff, Secretary of the Department of Homeland Security; Emilio Gonzalez, Director of the United States Citizenship and Immigration Services

1

("USCIS"); Robert Mueller, Director of the Federal Bureau of Investigation ("FBI"); and Alberto Gonzales, Attorney General of the United States Department of Justice.

On November 12, 2002, Plaintiff filed his I-485 application with the Nebraska Service Center of the USCIS. (Id. ¶ 9; Defs.' Mot., Ex. ¶ 3.) The USCIS submitted Plaintiff's name-check request to the FBI on January 22, 2003, and the FBI acknowledged receipt of the name check on July 21, 2003. (Defs.' Mot., Ex. A ¶ 15.) Plaintiff states that after submitting his application, he was asked to provide additional fingerprints for security checks, which he did on four occasions—January 16, 2003; August 17, 2004; May 26, 2005; and February 10, 2006.[1] (Id. ¶ 10.) On April 26, 2005, Plaintiff inquired about the status of his application. (Pl.'s Compl. ¶ 13, Ex. C at 1.) The Nebraska Service Center replied that "[w]e received Forms I-485 for you and your wife on 11[/]12[/]02" and that "[b]oth cases are currently undergoing the increased security checks the U.S. Bureau of Citizenship and Immigration Services has mandated for all cases filed at the Nebraska Service Center." (Id.) Plaintiff contacted the USCIS a second time on August 2, 2006. (Id. ¶ 14, Ex. C at 2.) On August 3, 2006, the USCIS replied that "[t]he processing of your case has been delayed" and that "[a] check of our records establishes that your case is not yet ready for decision, as the required investigation into your background remains open." (Id. ¶ 14.)

On August 28, 2006, Plaintiff received a "Request for Evidence" notice from the USCIS. (Id. ¶ 17.) Plaintiff submitted the requested evidence, which was received by the USCIS on September 28, 2006. (Id. ¶ 17, Ex. E.) The USCIS stated on its case-status website: "You should expect to receive a written decision or written update within 60 days of the date we received

---

[1] The Nebraska Service Center's chief of staff explains that "fingerprint check[s] must be less than fifteen months old at the time any application or petition is adjudicated." (Defs.' Mot., Ex. A ¶ 13.)

your response unless fingerprint processing or an interview are standard parts of case processing and have not yet been completed, in which case you can use our processing dates to estimate when this case will be done." (Id. ¶ 17.) After 60 days without an update, Plaintiff states that he contacted the USCIS on November 28, 2006. (Id. ¶ 18.) Plaintiff states that a customer representative confirmed that his I-485 application could not be adjudicated because of a pending name check. (Id.) At this time, the name check remains pending. (Defs.' Mot., Ex. A ¶ 15.) The USCIS states that it cannot determine whether to grant Plaintiff's I-485 application until the FBI has completed the name check. (Id. Ex. A ¶ 17.)

### B. PROCEDURAL HISTORY

Plaintiff filed his Complaint on December 18, 2006. On February 20, 2007, Defendants filed their Motion to Dismiss. Plaintiff subsequently filed a Response.

## II. LEGAL STANDARD

In order to defeat a defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), "the plaintiff must show that the complaint 'alleges a claim under federal law, and that the claim is substantial.'" Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc., 287 F.3d 568, 573 (6th Cir. 2002) (quoting Musson Theatrical, Inc. v. Fed. Express Corp., 89 F.3d 1244, 1248 (6th Cir. 1996)). The plaintiff "will survive the motion to dismiss by showing 'any arguable basis in law' for the claims set forth in the complaint." Id. (quoting Musson, 89 F.3d at 1248). Moreover, the "plaintiff has the burden of proving jurisdiction." Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir 1990).

In addition, Defendants have moved for dismissal under Rule 12(b)(6), for failure to state a claim upon which relief can be granted. The Sixth Circuit has instructed that when a court is

3

confronted with a motion for dismissal based on both Rules 12(b)(1) and 12(b)(6), the court is "bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if th[e] court lacks subject-matter jurisdiction." Id.

## III.    ANALYSIS OF DEFENDANTS' MOTION TO DISMISS

Plaintiff asserts subject-matter jurisdiction based on 28 U.S.C. § 2201 (Declaratory Judgment Act); 28 U.S.C. § 1331 (Federal Question Statute); 28 U.S.C. § 1361 (Mandamus Act); and 5 U.S.C. § 701 (Administrative Procedure Act). The Declaratory Judgment Act does not provide an independent basis for subject-matter jurisdiction. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950). Similarly, the Federal Question Statute does not provide an independent basis of jurisdiction.[2] In other words, the Declaratory Judgment Act and Federal Question Statute are procedural vehicles used to confer subject-matter jurisdiction. Thus, the Court will examine the Mandamus Act and the Administrative Procedure Act to see if subject-matter jurisdiction can be established.

Plaintiff concedes that Defendants are not bound by a statutorily-imposed timeline to adjudicate his application. However, Plaintiff believes that the processing time of his application has taken too long. Essentially, Plaintiff seeks a court order to compel Defendants to adjudicate his application. Plaintiff explains that his cause of action "challenges only the Defendants' timeliness in adjudication of Plaintiff's application, not the granting or denial of that application." (Pl.'s Compl. ¶ 20.)

Plaintiff relies heavily on the fact that the USCIS is currently adjudicating applications that were filed last year, while his application—which was filed more than 50 months

---
[2] The Federal Question Statute states that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

4

ago—remains without a definite resolution. (Pl.'s Br. Supp. Resp., 6, Ex. H at 3.) Plaintiff argues that Defendants have failed to adjudicate his application within a reasonable amount of time, and furthermore, that they have a nondiscretionary duty to adjudicate his application within a reasonable time.

### A. MANDAMUS ACT—28 U.S.C. § 1361

Mandamus jurisdiction is governed by 28 U.S.C. § 1361, which states that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." However, mandamus relief is an "extraordinary remedy" that "will issue only to compel the performance of "'a clear nondiscretionary duty.'" Pittston Coal Group v. Sebben, 488 U.S. 105, 121 (1988) (quoting Heckler v. Ringer, 466 U.S. 602, 616 (1984)). See also In Re Parker, 49 F.3d 204, 206 (6th Cir. 1995) (stating "[m]andamus is a drastic remedy, to be invoked only in extraordinary situations where [plaintiff] can show a clear and indisputable right to the relief sought"). Specifically, mandamus relief is proper where the plaintiff can show that (1) the plaintiff has a "'clear and certain claim'" to the relief sought; (2) the defendant official has a "'nondiscretionary, ministerial' duty to act 'so plainly prescribed as to be free from doubt'"; and (3) "'no other adequate remedy [is] available.'" Anjum v. Hansen, No. 06-00319, 2007 WL 983215, at *3 (S.D. Ohio Mar. 28, 2007) (quoting Patel v. Reno, 134 F.2d 929, 931 (9th Cir. 1988)). See also Heckler, 466 U.S. at 616-17.

In his Response, Plaintiff recognizes that a writ of mandamus is improper to compel discretionary agency action, but he urges the Court to order Defendants to adjudicate his

5

application.[3] Plaintiff supports his argument by citing to cases from other federal district courts—which are non-binding—that have found that the USCIS has a nondiscretionary duty to adjudicate an I-485 application. (Pl.'s Resp., 5-6.)

The Court disagrees with Plaintiff. The Court finds that the USCIS does not have a nondiscretionary duty to process I-485 applications. The United States Supreme Court has held that it is "'[t]he power of congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention.'" Kleindienst v. Mandel, 408 U.S. 753, 766 (1972) (quoting Lem Moon Sing v. United States, 158 U.S. 538, 547 (1895)). In fact, when Congress enacted Section 245(a) of the Immigration and Nationality Act ("INA"), it placed the adjustment of alien status in the sole discretion of the Attorney General. 8 U.S.C. § 1255(a) (Supp. 2007).[4] The INA states:

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner *may be adjusted by the Attorney General, in his discretion* and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence . . . .

Id. (emphasis added). Furthermore, the statute lacks a mandatory time constraint by which an application must be adjudicated. See id.; Patel v. Chertoff, No. 06-01207 WL 1223553, at *3 (E.D. Mo. Apr. 24, 2007) (stating "[t]here is no statutory or regulatory limit on the time that USCIS may take in evaluating an alien's I-485 application to adjust status to permanent resident"); Elzerw v. Mueller, No. 07-00166, 2007 WL 1221195, at *2 (E.D. Pa. Apr. 23, 2007)

---

[3] It should be noted that the Court does not find the mere passage of time—without any allegations of bad faith or dilatory tactics—to be per se unreasonable.
[4] It should be noted that 8 U.S.C. § 1255(a) is the codification of Section 245(a) of the INA.

(stating "[n]either the statute nor enabling regulations establish a time frame . . . to adjudicate such an application"); Safadi v. Howard, 466 F. Supp. 2d 696, 699 (E.D. Va. 2006) (stating "[n]owhere in [§ 1255(a)] is there any reference to time limits for the processing of adjustment of status applications or the need for expedition in doing so"). As several federal district courts have found, the "absence of any such reference is consistent with, and confirmatory of, Congress' intent to confer on USCIS discretion over not just the adjustment of status decision, but also the process employed to reach that result, and to exclude from judicial review the exercise of all that discretion." Safadi, 466 F. Supp. 2d at 699.

In sum, the Attorney General has sole discretion to process an application for adjustment of status. See 8 U.S.C. § 1255(a) ("The status of an alien . . . may be adjusted by the Attorney General, in his discretion . . . ."); Patel v. Chertoff, 2007 WL 1223553, at *4 ("[E]valuation of an alien's application to adjust status has been committed by Congress to the discretion of the Attorney General.") In fact, Congress expressly precluded judicial review of "any judgment regarding the granting of relief under section . . . 1255 [adjustment of status] of this title, or . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is . . . in [their] discretion." 8 U.S.C. § 1252(a)(2)(B)(i), (ii). As such, Plaintiff fails to satisfy the three prongs needed to establish mandamus jurisdiction. Thus, the Court lacks subject-matter jurisdiction to grant a writ of mandamus because Plaintiff has not demonstrated that Defendants have a nondiscretionary duty to act on his application.

## B. ADMINISTRATIVE PROCEDURE ACT § 701 ("APA")

Plaintiff asserts subject-matter jurisdiction based on the APA, by alleging that Defendants failed to process his application within a reasonable amount of time.[5] Plaintiff bases his argument on the APA's provision that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b) (2007). The APA allows courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1) (2007). Furthermore, Plaintiff relies on Section 702, which provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702 (2007).

On the other hand, Defendants argue that the APA does not allow for judicial review of the USCIS's adjudication of a pending I-485 application. Defendants base their argument on the APA itself, which states that a plaintiff cannot seek to compel "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2) (2007). In fact, the Supreme Court clarified that "agency delays or 'failures to act are sometimes remediable under the APA, but not always.'" Yan v. Mueller, No. 07-0313, 2007 WL 1521732, at *8 (S.D. Tex. May 24, 2007) (quoting Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 62 (2004)).

The Court agrees with Defendants. As discussed above, the adjudication of an adjustment-of-status application is governed by agency discretion. 8 U.S.C. § 1255(a) ("The status of an alien . . . may be adjusted by the Attorney General, in his discretion . . . .") Although the Court may sympathize with Plaintiff, the Court cannot order Defendants to adjudicate an

---

[5] The APA, by itself, does not provide an independent basis for subject-matter jurisdiction. Califano v. Sanders, 430 U.S. 99, 105-06 (1977). However, 28 U.S.C. § 1331 (federal question statute), in conjunction with the APA, does allow federal district courts to establish subject-matter jurisdiction.

application before a name check returns. This is not a case where Defendants have taken *no* action or have refused to act on Plaintiff's application. Similar to the court's reasoning in Patel v. Chertoff—where the plaintiff did not allege "circumstances that would indicate [that] the USCIS ha[d] unlawfully withheld or unreasonably delayed action on their applications"—Plaintiff in this case has not alleged that the USCIS has acted in bad faith or "remained completely idle." 2007 WL 1223553, at *3. In fact, the FBI is currently processing Plaintiff's name check, along with 14,491 other name checks.[6] (Defs.' Mot., Ex. A ¶ 17.) As such, the Court is satisfied that Plaintiff's name check is pending within the FBI's system, and that the USCIS is "processing [Plaintiff's] adjustment of status application in accordance with standard procedures." (Defs.' Mot., Ex. A ¶¶ 17, 19.)

Nonetheless, Plaintiff wants a speedier determination regarding his application. Not only does the Court have no jurisdictional basis to interfere with the proper adjudication of an application, the Court believes that such interference could hamper the investigations necessary to ensure our national security in a post 9-11 world. In sum, the Court cannot—and will not—provide Plaintiff's requested relief. Given that §1255(a) is void of any time constraint and that Congress explicitly chose to leave adjudication to agency discretion, Plaintiff's wait does not establish subject-matter jurisdiction under the APA.

## IV. CONCLUSION

For the reasons stated above, the Court has no subject-matter jurisdiction over Plaintiff's Complaint.

Accordingly,

---

[6] It should be noted that in September 2005, the FBI completed its name-check investigation of Plaintiff's wife. (Pl.'s Compl., Ex. D at 4.)

IT IS ORDERED that Defendants' Motion to Dismiss is granted, pursuant to Rule 12(b)(1).

IT IS FURTHER ORDERED that Plaintiff's Complaint is dismissed without prejudice.

    s/Bernard A. Friedman
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: July 9, 2007
      Detroit, Michigan

I hereby certify that a copy of the foregoing document was served upon counsel of record by electronic and/or ordinary mail.

    s/Carol Mullins
Deputy Clerk